UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES BROWN

          Plaintiff,

   v.                                      **DECISION AND ORDER**
                                                        11-CV-1023S

BETH CADE, N. SHARP, DR. JADOW RAO,
R. KILLINGER, and DR. ABBASSY

          Defendants.

---

      1.     *Pro se* Plaintiff, James Brown, an inmate in the custody of the New York Department of Corrections and Community Service ("DOCCS") at the Attica Correctional Facility, brings this action against several medical employees of that facility alleging that they violated his rights under 42 U.S.C. § 1983.[1] Defendants Drs. "S. Abbassy" and Jadow Rao, both physicians, Rosalyn Killinger, a nurse administrator, and nurse "N. Sharp" now move to dismiss his complaint.

      2.     Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

---

[1]Cognizant of the distinct disadvantage that *pro se* litigants face, this Court has read Nwabue's submissions carefully and liberally, and has interpreted them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

3. According to his complaint, Brown's troubles began on December 1, 2008 when he was caught by a corrections officer with two contraband pills. Brown alleges that Corrections Officer Sergant Skomski then filed a misbehavior report charging Brown with selling the pills. Brown, however, objects to this characterization, protesting that he never sold the pills. At an internal hearing held sometime thereafter, he was found guilty of possessing unauthorized medication, presumably a lesser infraction than selling or distributing medication.

4.      On December 2, the day after this incident, he was not let out of cell for his usual medication. When he asked why, Brown was told that Nurse Cade left a note indicating that he should be taken off the medication list. He later learned that Nurse Cade had told Dr. Rao that Brown was hoarding medication. It may not have been until July 12, 2009 that Brown was re-authorized to take medication.[2] But once again, some two weeks later, Nurse Cade noted in Brown's medical folder that he was hoarding and selling his medication, and that he refused to "sign a refusal." This apparently led to further complications with his medications.

5.      Indeed, Brown alleges that his problems with the administration of his medication continued through the next year. On March 18, 2010, Dr. Rao informed Brown that Nurses Cade and Sharp told him that Brown was selling his medication. Again, Brown refuted that accusation.

6.      In addition, Brown alleges that Nurse Administrator Killinger has written false information in his medical file and, at grievance hearings, has lied about the facts and circumstances of his treatment. Brown also recounts an incident on January 28, 2011. At that time, Dr. Abbassy, presumably another physician in the facility, refused to administer a vitamin E pill. According to Brown, Dr. Abbassy told Brown that "it cost too much" and that "he did not need it." (Complaint, at Docket page No. 9). Brown asserts that as a result his "skin condition" got worse. He further notes that he was later prescribed a vitamin E lotion by his "primary care provider," who is unidentified.

---

[2] Brown's complaint implies as much. But, later in the complaint, Brown asserts that he was denied medication by the "p.m." nurse for 29 days. It is unclear whether he takes medication in the morning and in the evening. While it appears that this denial of medication is related to the other problems recounted throughout his complaint, it is not entirely clear.

7.      Defendants move for dismissal on various grounds and in various degrees. Each of the moving defendants seek dismissal in their official capacities. In addition, Defendant Killinger seeks dismissal in her personal capacity regarding any claims associated with the internal grievance procedure. Last, Defendant Abbassy contends that Brown has stated no claim against him in either his personal or official capacity. For the reasons that follow, Defendants' motion is granted in all respects.

8.      First, to the extent that Brown's claims are asserted against Defendants in their official capacities, those claims must be dismissed. DOCCS is an agency of the State of New York and it, along with its employees when sued in their official capacity, are protected from suit in federal court by the Eleventh Amendment. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); Johnson v. New York, No. 10 CIV. 9532 DLC, 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012).

9.      Second, any claims relating to Defendant Killinger's alleged improper actions with the grievance process must also be dismissed because "grievance programs [are] created by state law [and] are not required by the Constitution[;] consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." Shell v. Brzezniak, 365 F .Supp. 2d 362, 370 (W.D.N.Y. 2005); see Anderson v. Duke, No. 904-CV-0030 NAM/DEP, 2008 WL 238557, at *6 (N.D.N.Y. Jan. 28, 2008) (Report and Recommendation approved; collecting cases); see also Robert D'Onofrio v. City of New York, 07 CV 0731 CBA LB, 2010 WL 4673879 (E.D.N.Y. Sept. 14, 2010) (no claim under 42 U.S.C. § 1983 for abuse of civil process). Defendants do not move, however, to dismiss claims against Killinger for whatever role she played in denying Brown

his medication. As such, this Court takes no position on the viability of those claims and they will move forward.

10. Third, Brown has not stated a cognizable claim against Defendant Abbassy. Brown asserts that Dr. Abbassy refused to provide him with a vitamin E pill, causing a "skin condition" to worsen. Even construed liberally, however, this does not state a claim for deliberate indifference to a serious medical need.

11. Generally, to state a claim for inadequate medical care under the United States Constitution, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998). Such indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment. Estelle, 429 U.S. at 104–05. But to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted); Chance, 143 F.3d at 702.

12. Without further elaboration, the facts alleged here simply do not suggest that Brown's "skin condition" was sufficiently serious to state a claim under the Constitution. Brown supplies no facts tending to show that this condition limited him in any way, or that failure to treat it led to any amount of pain – much less pain or limitations sufficient under the high standard imposed by the Constitution. See Swindell v. Supple, No. 02CIV.3182RWS, 2005 WL 267725, at *7 (S.D.N.Y. Feb. 3, 2005) (skin rash causing some pain and embarrassment was not "of such an urgent and substantially painful nature as

would satisfy the objective prong of the deliberate indifference standard"). Accordingly, this claim is dismissed.

****

IT HEREBY IS ORDERED, that Defendants' motion to dismiss [4] is GRANTED in accordance with this Decision and Order.

FURTHER, Defendant Abbassy is DISMISSED from this case.

Dated:   March 29, 2013
         Buffalo, New York

                                              /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                                  Chief Judge
                                            United States District Court